UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY BARLOW,

       Plaintiff,                           Civil Action No. 10-12545

      v.                                    District Judge Nancy G. Edmunds
                                         Magistrate Judge Laurie J. Michelson

CHASE BANK,

       Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT**
**DEFENDANT CHASE BANK'S MOTION FOR SUMMARY JUDGMENT [14]**

      Plaintiff-mortgagor Shirley Barlow brought this case against Defendant-mortgagee Chase Home Finance, LLC ("Chase"), asserting that Chase engaged in fraud, conspiracy to defraud, and counterfeiting. (Dkt. 1, Compl. at ECF 1-3.) Chase filed a Motion for Summary Judgment (Dkt. 14), which has been referred to this Court for Report and Recommendation (Dkts. 5, 13). This Court issued an order directing Plaintiff to file a response to Chase's Motion, but Plaintiff has failed to do so. (*See* Dkt. 17.) Upon a review of the Complaint and Chase's Motion, the Court will dispense with oral argument. *See* E.D. Mich. LR 7.1(f)(2).

      For the following reasons, this Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

## I. BACKGROUND

### A. The Parties' Relationship

On December 21, 1999, Plaintiff encumbered real property located in Detroit, Michigan ("Property") by executing a mortgage in favor of non-party St. Claire Mortgage Corporation in the amount of $69,800.00 ("Mortgage"). (Def.'s Mot. Summ. J., Ex. A.) St. Claire assigned the Mortgage to non-party Flagstar Bank, FSB, and, on July 24, 2000, Flagstar assigned its rights to Chase Mortgage Company. (Def.'s Mot. Summ. J., Exs. B, C.) Defendant Chase Home Finance, LLC is the successor to Chase Mortgage Company by way of two mergers. (Def.'s Mot. Summ. J. at 2.)

Defendant asserts that Plaintiff fell behind on her mortgage payments, and, on September 30, 2010, Chase sent Plaintiff a letter entitled "Acceleration Warning (Notice of Intent to Foreclose)." (*See* Def.'s Mot. Summ. J., Ex. D.) On November 12, 2010, Defendant's present counsel sent Plaintiff a letter indicating that the foreclosure matter had been referred to their office and that "[u]nder the terms of your mortgage, the creditor has elected to accelerate the total indebtedness." (Def.'s Mot. Summ. J., Ex. E.)

In its April 5, 2011 motion, however, Defendant expressed that "[t]o date no foreclosure sale has occurred and our office has received communication from Federal Home Loan Mortgage Corporation, the entity which owns the indebtedness on the Mortgage and Note, to cease foreclosure and to close our foreclosure file. There will be no foreclosure." (Def.'s Mot. Summ. J. at 2-3.)

**B. Plaintiff's Complaint**

Plaintiff's June 2010 Complaint, entitled "Notice of Fraud and Intent to Litigate," provides that

> This is my Constructive Notice to you [Chase] that I have discovered extensive fraud in regard to the mortgage and transactions associated with it on certain real property as noted below. It has come to my attention that you are involved in the attempted foreclosure on my property . . . where documented fraud has occurred. This is your Constructive Notice that evidence in this matter has been personally delivered to the FBI and SECRET SERVICE, for investigation and prosecution, resulting from violations of Federal Law including, but not limited to, COUNTERFEITING and CONSPIRACY TO DEFRAUD as outlined in the attached documents. . . .
>
> If . . . you would choose to move forward in ANY manner participate in ANY way in the attempted foreclosure action referenced above, you will demonstrate your complicity and willingness to be a party to the COUNTERFEITING and CONSPIRACY TO DEFRAUD now that you have been noticed and will become subject to potential criminal prosecution and civil litigation for damages.

(Compl. at ECF 1-2.)

Attached to the Complaint are a large number of exhibits totaling over 150 pages. The first appears to be a letter to the FBI and sheds some light on Plaintiff's allegations:

> I have discovered that there has been, what appears to be[] a counterfeit copy of the Mortgage Note presented as proof of claim by a certain group of people, including, <u>but not limited to</u>, agents of the mortgage company and attorneys working with them. . . . I have made demands that the individuals involved provide proof of their claim through the presentation, for my inspection, of the original documents signed at closing as evidence that they are, in fact, the holder in due course of the purported obligation. They have refused to do so and instead have only made a "copy" of the documents allegedly signed at closing available for inspection. *These copies are, in fact, counterfeit securities as described under 18 U.S.C. § 474* and in the documentation accompanying this letter, and multiple person have been or are current in possession of multiple copies of said counterfeit securities. I believe the "original" wet ink signature

3

> documents (securities) have been bundled and sold for profit and are not able to be produced as required by law and this is *fraud* being committed to steal my property through counterfeiting of securities.

(Dkt. 1 at ECF 4 (second and third emphases added).)

Another exhibit is a March 17, 2010 letter from Plaintiff to Chase stating that a receipt for the amount of the loan was not provided at closing. (Dkt. 1 at ECF 8.) It further provides,

> I am conditionally exercising my right to [rescission] of my signature on all W-9, Power of Attorney forms and the Mortgage from the date of the closing. This conditional notice of [rescission] will become a hard notice of [rescission] if the receipt or 1099 is not received by within [ten calendar days].

(Dkt. 1 at ECF 8.)

Other exhibits include unanswered Requests for Admissions apparently mailed to Chase, a promissory note relating to the Property, and a large amount of papers from what appears to be other foreclosure cases not involving Plaintiff, Defendant, or the Property.

Given the foregoing, the Court believes Plaintiff is (1) asserting fraud (and conspiracy to defraud), (2) asserting counterfeiting in violation of 18 U.S.C. § 474, and (3) asking this Court to rescind the Mortgage because Chase's predecessor-in-interest failed to provide a receipt for the amount of the loan at closing.

### C. Procedural History

Plaintiff filed this suit on June 28, 2010. (Dkt. 1.) On April 5, 2011, Chase filed its Motion for Summary Judgment. (Dkt. 14.) On May 18, 2011, this Court entered an Order requesting Plaintiff to file a response to Chase's Motion and explaining that any such response "shall be filed . . . on or before June 8, 2011." (Dkt. 17.) Plaintiff did not file a response by June 8, 2011 (or as of this date) and the time for discovery has elapsed (Dkt. 12).

## II. ANALYSIS

### A. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (explaining that the moving party may carry its summary judgment burden without "produc[ing] evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof"). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Here, as noted above, Defendant's Motion for Summary Judgment is unopposed. But this does not mean that the motion may be granted by default. *See* Fed. R. Civ. P. 56, advisory committee note (2010) (explaining that under Rule 56(e), "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion"); *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996) ("The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."). Consistent with the summary judgment principles just recited, the movant must still demonstrate that it is entitled to judgment as a matter of law. On the other hand, this Court need not comb the record to find evidence creating a genuine issue of material fact. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). In fact, Rule 56(c), as recently amended, essentially codifies this principle. *See* Fed. R. Civ. P. 56(c)(3); Fed. R. Civ. P. 56, advisory committee notes (2010) ("Subdivision (c)(3) reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record."); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence . . . of a genuine dispute.").

Finally, the Court is mindful that Plaintiff is proceeding *pro se* and "[a] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so,

> the duty "does not require [a court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its

6

> legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

*Armstead v. Bush*, No. 305CV274H, 2005 WL 1503556, at *2 (W.D. Ky. Jun. 23, 2005); *accord Bonner v. Rechtzigel*, No. 10-15069, 2011 WL 1336678, at *1 (E.D. Mich. Apr. 7, 2011).

### B.  Plaintiff's Fraud and Conspiracy to Defraud Claims Should Be Dismissed

Plaintiff's fraud theory appears to be premised on the notion that Chase attempted to foreclose on the Property without adequately proving to Plaintiff that it possesses the "wet ink" original of her Mortgage or other related documents. (*See* Dkt. 1 at ECF 4.) Instead, Plaintiff asserts, Chase only made "a 'copy' of the documents allegedly signed at closing available for inspection." (*See* Dkt. 1 at ECF 4.)

Under Michigan law, the proponent of a fraud claim must prove:

> (1) That defendant made a material representation; (2) that was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813 (1976). Each of the facts above must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery. *Id.* The burden rests on plaintiffs. *Id.* Fraud will not be presumed, but must be proved by clear, satisfactory and convincing evidence. *Id.*

*Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071, 1078 (E.D. Mich. 2004).

Even very generously granting that Plaintiff has *pled* the first four elements, Plaintiff has not produced sufficient *evidence* supporting those elements – her signed letter to the FBI notwithstanding. More importantly, however, regarding elements (5) and (6) – that Plaintiff acted

in reliance on Chase's false representations, and that due to that reliance, she suffered harm – Plaintiff's case against Chase is even more problematic. First, based on her letter to the FBI, Plaintiff believed that Chase did not have the right to foreclose without producing the originals; this severely undermines her assertion that Chase induced detrimental reliance. Second, Defendant's counsel has asserted to this Court that "no foreclosure sale has occurred and our office has received communication from Federal Home Loan Mortgage Corporation, the entity which owns the indebtedness on the Mortgage and Note, to cease and to close our foreclosure file. There will be no foreclosure." (Def.'s Mot. for Summ. J. At 2-3.) With no contrary evidence identified (or even produced) by Plaintiff, the Court fails to see how Chase's alleged act of producing copies of the original mortgage documents – even if falsely implying that it had the right to foreclose when it did not – caused any harm to Plaintiff.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's fraud and conspiracy to defraud claims. *See Mekani v. Homecoming Financial, LLC*, 752 F. Supp. 2d 785, 789 n.2 (E.D. Mich. 2010) ("A civil conspiracy, by itself, is not a cognizable claim but is defined by the tort that constitutes the underlying theory of liability, here fraud." (citing *Roche v. Blair*, 305 Mich. 608, 9 N.W.2d 861, 863 (Mich.1943)); *Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 875 (E.D. Mich. 2010) (dismissing civil conspiracy claim where plaintiff failed to state claim for underlying fraud claim).

### C. Plaintiff's Counterfeiting Claim Should be Dismissed

It appears that Plaintiff's counterfeiting theory is based on the fact that Chase has made copies of the original documents associated with her mortgage and "[t]hese copies are, in fact, counterfeit securities as described under 18 U.S.C. § 474. . . . It is obvious [that a certified copy of

8

the mortgage document(s) that has been provided] does not meet the requirements under 18 U.S.C. § 474 as a 'copy' of security and is therefore a counterfeit security presented as evidence to attempt to defraud me." (Dkt. 1 at ECF 4.)

The Court fails to appreciate how 18 U.S.C. § 474 applies to this case. First, it is criminal statute. Second, the statute relates to counterfeiting an "obligation or other security of the United States." *See* 18 U.S.C. § 474(a) (making a person guilty of a felony for, *inter alia*, (1) "having . . . possession of any plate . . . form which has been printed . . . any obligation or other security of the United States [and] uses such plate . . . for the purpose of printing any such or similar obligation or other security" and (2) making or possessing, with the intent to defraud, "an analog, digital, or electronic image of any obligation or other security of the United States"); *Regan v. Time, Inc.*, 468 U.S. 641, 643 (1984) (White, J.) ("Title 18 U.S.C. § 474 was enacted during the Civil War to combat the surge in counterfeiting caused by the great increase in Government obligations issued to fund the war and the unsettled economic conditions of the time." (citing *United States v. Raynor*, 302 U.S. 540, 544-546 (1938)). Thus, even assuming that 18 U.S.C. § 474 creates some sort of private right of action that Plaintiff may enforce – a highly doubtful presupposition, *see Riddle v. HSBC Consumer and Mortgage Lending*, No. 1:10-cv-408, 2010 U.S. Dist. Lexis 91301, at *7-8 (W.D. Mich. Sept. 2, 2010); *West v. ReconTrust Co.*, No. 2:10-cv-01950, 2011 U.S. Dist. LEXIS 97447, at *19 (D. Nev. Aug. 30, 2011) – there are neither facts alleged nor evidence identified that show how Chase violated or has otherwise implicated 18 U.S.C. § 474. Plaintiff's counterfeiting claim therefore fails as a matter of law.

**D. Plaintiff's Request for Rescission, If Any, Should Be Denied**

It appears that Plaintiff does not seek rescission of her Mortgage from this Court. The "allegations" portion of her Complaint seeks no such relief and Plaintiff has cited to no state or federal law entitling her to such relief.

However, a March 17, 2010 letter to Chase attached to Plaintiff's Complaint threatened rescission unless Chase produced a "receipt or 1099" indicating the amount loaned. (Dkt. 1 at ECF 8.) The letter notes that "[u]pon a review of the documentation provided to me at the closing, I did not find a receipt for the amount of the loan this corporation represents . . . was loaned to me." (*Id.*) Because Plaintiff's letter threatening rescission involves the failure on the part of Chase's predecessor-in-interest to produce loan documents at closing, this Court construes any claim for rescission, assuming very generously that such relief is requested, as one pursuant to the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*[1]

A party may assert a claim for rescission under 15 U.S.C. § 1635 for a TILA violation. However, "'a borrower's right of rescission expires three years after the date of the consummation of the transaction under § 1635(f).'" *Richardson v. Am. Equity Mortg., Inc.*, No. 10-13183, 2011

---

[1]*March v. Countrywide Home Loans Servicing*, No. 10-12650, 2011 WL 1792592, at *3 (E.D. Mich. May 11, 2011) ("According to Plaintiffs, TILA was violated because they did not receive notice of the right to cancel the loan at closing, and did not receive copies of their mortgage documents three days prior to the closing."); *Greene v. Benefit Mortg. Corp.*, No. 08-12968, 2009 WL 56056, at *8-9 (E.D. Mich. Jan. 8, 2009) ("Plaintiff says she did not receive any documents before the closing, and the packet of documents she received after the closing contained only the ARM note and not the mortgage. Plaintiff also says she only recently learned that taxes included as paid and escrowed in the HUD-1 Settlement Statement were not paid. She says she never received an escrow statement identifying the escrow of these funds. . . . However, with the exercise of due diligence Plaintiff had reasonable opportunity to discover in 2005 or at least in 2006, after the creation of the tax escrow account, that she had received inaccurate disclosures. Her lawsuit filed in June 2008, nearly three years later, was untimely under TILA.").

WL 11485642, at *1 (E.D. Mich. Apr. 19, 2011) (quoting *El-Fil v. Countrywide Home Loans, Inc.*, No. 09-11687, 2009 WL 4946259 (E.D. Mich. Dec. 14, 2009)); *accord Dersch v. BAC Home Loan Servicing LP*, No. 1:11-CV-267, 2011 WL 3100561, at *4 (W.D. Mich. July 25, 2011) ("In addition, although Dersch does not expressly seek rescission under the TILA, the right to rescission under the TILA expires after three years."); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998) ("We respect Congress's manifest intent by concluding that the [TILA] permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run.").

The evidence in this case reflects that closing occurred in December 1999. (*See* Dkt. 1 at ECF 8; Def.'s Mot. Summ. J., Ex. A.) Plaintiff did not file this suit until 2010. (Dkt. 1) Accordingly, Plaintiff's rescission claim under TILA, if one has been pled, is time-barred and fails as a matter of law.

## III. RECOMMENDATION AND CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  September 2, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 2, 2011.

s/J. Johnson
Deputy Clerk